WAGNER CHOI & VERBRUGGE
Attorneys at Law
JAMES A. WAGNER
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Fax: (808) 566-6900
Email: jwagner@hibklaw.com

Proposed Attorneys for Debtor and
Debtor-in-Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>HAWAII PACIFIC TELEPORT, LP,<br><br>     Debtor and<br>     Debtor-in-possession. | Case No. _11- 01764_<br>(Chapter 11)<br><br>Judge: Hon. Robert J. Faris |

## MOTION FOR ORDER AUTHORIZING DEBTOR TO
## USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c)(2)

HAWAII PACIFIC TELEPORT, LP, debtor-in-possession (the

"Debtor" or the "Company"), hereby moves this Court for the entry of an order

authorizing the Debtor to use cash collateral pursuant to 11 U.S.C. § 363(c)(2).

This Motion is brought pursuant to 11 U.S.C. § 363 and Rules

4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure, and is based upon

the attached Memorandum in Support, the Declaration of Leeana A. Smith-Ryland

66814

in Support ("Smith-Ryland Declaration"), and by the record in this case, and by such other evidence and argument as counsel may present before or at the hearing on the Motion.

## SUMMARY OF CASH COLLATERAL RELIEF SOUGHT

The Debtor seeks to use the Cash Collateral of Christopher K. Guthrie ("Guthrie" or "Secured Creditor"). Cash Collateral in this case is composed of accounts receivable and the proceeds of accounts receivable. .

The total amount shown as due the Secured Creditor on the Debtor's records as of the Petition Date is approximately $2,200,000.

The Debtor seeks authority to use the Secured Creditor's Cash Collateral to pay operating expenses for the six-month period following the Petition Date. The proposed use shall be limited to payment of not more than 115% of the expenses each period (on an aggregate and cumulative basis), as set forth in the budget attached to the Smith-Ryland Declaration as Exhibit "A" ("Cash Budget"), provided, however, that the Debtor is not limited by line item with respect to actual expenses.

The Debtor proposes to provide adequate protection for the use of Cash Collateral by providing the Secured Creditor with a replacement lien on all post-petition Cash Collateral and all proceeds of said collateral having the same validity, priority and extent as the Secured Creditor's existing security interest in

the Debtor's pre-petition collateral, all proceeds of said collateral and subject to the same rights and challenges by or on behalf of the Debtor.

DATED: Honolulu, Hawaii, June 23, 2011.

/s/ James A. Wagner
JAMES A. WAGNER
Proposed Attorney for Debtor
and Debtor-in-Possession

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>HAWAII PACIFIC TELEPORT, LP,<br><br>    Debtor and<br>    Debtor-in-possession | Case No. _____<br>(Chapter 11) |

## MEMORANDUM IN SUPPORT OF MOTION

In support of its Motion for Order Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. § 363(c)(2), HAWAII PACIFIC TELEPORT, LP, debtor and debtor-in-possession (the "Debtor" or the "Company"), respectfully represents as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2).

2.    Venue is proper before the Court, pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    This Motion is made pursuant to 11 U.S.C. § 363, and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

66814

## BACKGROUND

4.    The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on June 23, 2011.

5.    The Debtor continues to operate its businesses pursuant to 11 U.S.C. § 1107 and 1108.

6.    No creditors' committee has yet been appointed in this case.

7.    The Debtor (originally named Transvision International Teleport, LP) was formed on November 19, 2001, under the Hawaii Uniform Limited Partnership Act.  The Partnership's name was changed to Hawaii Pacific Teleport, LP in 2003.

8.    The Debtor provides internet, video, voice videoconferencing, and data transmission services to a variety of United States and international customers, including the U.S. Military, commercial shipping companies, and other satellite transmission companies.  The Debtor provides uplink and downlink services to a fiber optic cable service that terminates at the facility on Oahu.  The Debtor transmits information to the South Pacific and as far west as Afghanistan from satellites stationed over the Pacific.  The Debtor's services provide a vital resource for its various customers who would be seriously and adversely affected if the Debtor was unable to continue its operations uninterrupted.

9.    The Debtor has three fulltime employees engaged as

engineers whose duties are to maintain the Debtor's satellite communications equipment.

10.     The Debtor's General Partner is Hawaiian Transmission Solutions, LLC ("HTS, LLC") and its two limited partners are Imverse Asia, Inc. ("Imverse") as to a 63% interest, and Christopher K. Guthrie, as to a 36% interest. The remaining 1% is held by the General Partner.

11.     On or about May 11, 2011, Imverse was removed as the Manager of HTS, LLC and Hawaii Capital Holdings, LLC was elected Manager of HTS, LLC.

12.     The Debtor operates its satellite communications station at Kapolei, Hawaii on property licensed from James Campbell Company, LLC, pursuant to that certain License Agreement, dated October 1, 2008. The License is for a period of 15 years commencing October 1, 2008. The monthly license fee is currently $15,575 per month. The Debtor operates up to 14 satellite antennae and related communications equipment on the site.

13.     A number of the Debtor's antennae and related communications equipment are leased under nine leases from Allen Holdings, Inc., dba Allen Communications ("Allen"). Some of the leases have expired and others are allegedly in default. On March 5, 2011, Allen commenced that certain action entitled *Allen Holdings, Inc., dba Allen Communications v. Hawaii Pacific*

*Teleport, LP*; Civil No. 11-1-0511-03 in the Circuit Court of the First Circuit, State of Hawaii ("Allen Action") to terminate the leases and to repossess its equipment.

14.     The Allen Action remained pending as of the Petition Date. The Debtor is hopeful that a settlement of the Allen Action can be reached with Allen that will allow the Debtor to continue to use the Allen leased equipment.

15.     Allen Holdings, Inc. also holds a security interest in the Debtor's equipment, pursuant to those certain Security Agreements dated April 10, 2010 and November 4, 2010.  The collateral pledged under the two Security Agreements does not include "cash collateral" as that term is defined by the Bankruptcy Code.

16.     The Debtor's balance sheet as of June 16, 2011, showed current and fixed assets of approximately $1,600,000 at book value and other assets, primarily goodwill, of approximately $5,800,000.  Liabilities totaled approximately $3,649,000.  The Debtor's gross income from January 1, 2011 to June 16, 2011 was approximately $1,029,000.

## SECURED CREDITOR

17.     Based on the Debtor's books, Christopher K. Guthrie ("Secured Creditor") is allegedly owed approximately $2,200,000, as of the Petition Date. The debt may be secured by the Debtor's accounts receivable, pursuant to that

certain Uniform Commercial Code Financing Statement, filed January 11, 2010, in the Bureau of Conveyances of the State of Hawaii, as Document No. 2010-003959.

## USE OF CASH COLLATERAL

18.　Attached to the Declaration of Leeana A. Smith-Ryland as Exhibit "A" is a cash flow forecast for the period June 20, 2011, through December 31, 2011 (the "Cash Budget") prepared by the Debtor to project the expected cash flow from the Debtor's operations for the period during which the Debtor requests the use of the Cash Collateral.

19.　Attached hereto as Exhibit "1" is a copy of the Debtor's proposed Order granting the instant Motion. The proposed Order helps clarify the protections that will be put in place for the protection of the Secured Creditor in the event the Motion is granted.

20.　The Debtor requests authority to use the Cash Collateral to pay the reasonable and ordinary expenses of operating its business, including, without limitation, payroll and benefit expenses, payroll taxes, real property taxes, federal and state taxes, inventory, supplies and equipment, advertising, utility services, insurance, vendor and supplier services, and other expenditures as are necessary for operating their businesses and preserving its going concern value.

21.　The Debtor also requests authority to use the Cash Collateral

to pay the reasonable and ordinary expenses to administer its estate in bankruptcy, including, without limitation, quarterly fees payable to the United States Trustee, and payment of the fees and reimbursement of coasts to the Debtor's professionals including, without limitation, their attorneys, accountants, and financial advisors, and the fees and reimbursement of costs to the professionals retained with the Court's approval by any statutory committees appointed in the Chapter 11 case, in amounts approved and authorized to be paid by the Court.

22.    The Debtor's authority to use Cash Collateral shall be limited to payment of not more than 115% of the expenses each period (on an aggregate and cumulative basis), as set forth in the Cash Budget unless otherwise agreed by the Secured Creditor; provided, however, that the Debtor is not limited by line item with respect to actual expenses.

23.    The Debtor believes its Secured Creditor is adequately protected because the use of Cash Collateral enables the Debtor to operate its business that will generate replacement cash collateral ("Replacement Collateral") and the Debtor is willing to provide the Secured Creditor with replacement liens.

24.    Without prejudice to the Debtor's and other parties' positions regarding the validity, perfection, priority, and/or extent of any of the Secured

Creditor's claims or security interests in the Cash Collateral, and to provide

adequate protection for such security interests (if and to the extent such security

interests are valid and perfected), the Debtor intends to grant the Secured

Creditor replacement lien ("Replacement Lien"), with the same priority and

extent as the Secured Creditor's existing security interest in the pre-petition

collateral and all proceeds of said collateral.

26. The Replacement Lien would thus be granted with the same

validity and priority and to the same extent and as the Secured Creditor's

prepetition lien, and would be subject to the same rights and challenges by or on

behalf of the Debtor. The amount secured by the Replacement Lien shall be

equal to any actual net diminution of the Secured Creditor's Cash Collateral due

to the Debtor's use thereof. The diminution amount shall be referred to herein as

the Secured Creditor's Adequate Protection Claim.

26. The Replacement Lien shall be valid, perfected and

enforceable against the Replacement Collateral as of the Petition Date,

without further filing or recording of any document or instrument or the

taking of any further action, and shall not be subject to dispute, avoidance

or subordination as to the Adequate Protection Claim.

27. The Replacement Lien shall be subject and subordinate in

priority to any liens, security interests and other encumbrances, existing as

of the Petition Date, or which attach to the Replacement Collateral after the

Petition Date, that are valid, perfected, enforceable and unavoidable, that

are granted with the consent of the Secured Creditor or that are otherwise

senior to the pre-petition liens in favor of the Secured Creditor. The

Replacement Lien shall be valid and enforceable against any trustee of the

Chapter 11 case, or in any subsequent proceeding affecting the Debtor,

including any conversion of the Chapter 11 case to a case under Chapter 7

of the Bankruptcy Code.

28.     The Replacement Lien shall be subject to and subordinate to

the fees and expenses of a Chapter 7 trustee, if one is appointed, but not

including the fees and expenses of the trustee's professionals.

THE COURT SHOULD AUTHORIZE THE
DEBTOR'S USE OF CASH COLLATERAL BECAUSE
THE SECURED CREDITOR IS ADEQUATELY PROTECTED
AND WILL CONTINUE TO BE ADEQUATELY PROTECTED

29.     A debtor's use of estate property is governed by

Bankruptcy Code Section 363.

30.     A debtor-in-possession may continue to operate its business

unless the court orders otherwise, under 11 U.S.C. §§1107 and 1108, and so

long as the debtor continues to operate in its ordinary course of business, under

Section 363(c)(1) of the Bankruptcy Code, without notice or a hearing the

debtor may enter into transactions and use property of the estate, provided said

property does not constitute cash collateral.

31.     "Cash collateral" is defined in Bankruptcy Code Section 363(a) as meaning "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title."

32.     Bankruptcy Code Section 363(c)(2) permits a debtor to use cash collateral if either of two alternate circumstances exist:

> (A)  each entity that has an interest in such collateral consents; or
>
> (B)  the court, after notice and a hearing, authorizes such use . . . in accordance with the provisions of this section.

11 U.S.C. § 363( c)(2). Therefore, the Court may authorize use of a creditor's cash collateral in the absence of creditor consent.

33.     Authority to use Cash Collateral is consistent with the very purposes for which Chapter 11 exists:

A debtor, attempting to reorganize a business under Chapter 11,

clearly has a compelling need to use "cash collateral" in its effort to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.), 727 F.2d 1017,1019 (11th Cir. 1984).

34.     Courts will allow the use of cash collateral when the use tends to enhance or preserve the debtor's reorganization value. See, e.g., Stein v. United States Farmers Home Administration (In re Stein), 19 B.R. 458, 460 (Bankr. Pa. 1982)(debtor was granted authority to use cash collateral where the secured party was undersecured because the use of cash collateral was necessary to the debtor's continued operations and the creditor's "secured position can only be enhanced by the continued operation of the [debtor's business]"); In re Dynaco Corp., 162 B.R. 389, 396 (Bankr. D.N.H. 1993)(finding that the alternative to the debtor's use of cash collateral — termination of the debtor's business — would doom the reorganization and any chance to maximize value for all of the creditors).

35.     Pursuant to Section 363(e), "on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such

interest." 11 U.S.C. § 363(e) (emphasis added). Thus, the Court may authorize

the Debtors to use the Secured Lender's cash collateral if its interest in such

collateral is adequately protected.

36.     Bankruptcy Code Section 361 addresses the issue of

adequate protection, and although adequate protection is not defined therein,

several nonexclusive methods of adequate protection are enumerated:

> When adequate protection is required under section 362,
> 363, or 364 of this title of an interest of an entity in property, such
> adequate protection may be provided by—
>
>> (1)  requiring the trustee to make a cash
>> payment or periodic cash payments to such entity, to
>> the extent that the stay under section 362 of this title,
>> use, sale, or lease under section 363 of this title, or any
>> grant of a lien under section 364 of this title results in a
>> decrease in the value of such entity's interest in such
>> property;
>>
>> (2)  providing to such entity an additional or
>> replacement lien to the extent that such stay, use,
>> sale, lease, or grant results in a decrease in the
>> value of such entity's interest in such property; or
>>
>> (3)  granting such other relief, other than
>> entitling such entity to compensation allowable under
>> section 503(b)(1) of this title as an administrative
>> expense, as will result in the realization by such entity
>>
>> of the indubitable equivalent of such entity's interest in
>> such property.

11 U.S.C. §361.

37.     It is only when the value of a secured creditor's interest

in collateral is likely to decline post-petition that added protection is

needed:

> The analysis of the Supreme Court in <u>Timbers</u> is instructive here. <u>The phrase "interest in property" in § 363(e) means the value of the collateral. That is the interest that I am required to protect.</u> If that value is likely to diminish during the time of the use, adequate protection must be provided by the Debtor.

In re McCombs Properties VI, Ltd., 88 B.R. 261, 266 (Bankr.C.D.Cal. 1988) (emphasis added). <u>Accord, In re Delta Resources, Inc.,</u> 54 F.3d 722, 730 (11th Cir.), <u>cert. denied,</u> 64 U.S.L.W. 3348 (1995); <u>In re Westchase I L.P.,</u> 126 B.R. 692, 694-95 (W.D.N.C. 1991).

38. Adequate protection is aimed not at protecting precise collateral, but protecting the value of the secured creditor's interest in collateral. <u>In re Williams,</u> 7 B.R. 234, 237. (Bankr. M.D.Ga. 1980). Though a creditor may not be able to retain his lien upon the specific collateral held at the time of filing, the purpose of section 361 is to insure that the secured creditor receives the value for which he bargained.

## THE SECURED CREDITOR IS ADEQUATELY PROTECTED BY THE GOING CONCERN VALUE OF THE DEBTOR'S BUSINESS AND THE REPLACEMENT LIENS

39. Courts should take a pragmatic approach when assessing whether a secured creditor is adequately protected, and that may require consideration of whatever factors are relevant to a particular debtor. See, <u>e.g., In re Rogers,</u> 239 B.R. 883, 887 (Bankr. E.D.Tex. 1999):

> The determination of whether a creditor's interest is adequately protected is not an exact science nor does it involve a precise arithmetic computation. Rather, it is pragmatic and synthetic,

requiring a court to balance all relevant factors in a particular case, including the value of the collateral, whether the collateral is likely to depreciate over time, the debtor's prospects for a successful reorganization and the debtor's performance under the plan. In re Olick, 221 B.R. 146, 161 (Bankr.E.D.Pa.1998). Other considerations may include the balancing of hardships between the parties and whether the creditor's property interest is being unduly jeopardized. *Id.*

40.     The Bankruptcy Code expressly provides that the granting of additional liens constitutes a means of providing adequate protection. 11 U.S.C. § 361(2)("adequate protection may be provided by . . . an additional or replacement lien to the extent that such. . . use . . . results in a decrease in the value of such entity's interest in such property.")

41.     Courts have recognized that the granting of replacement liens, coupled with the continued operations of the debtor, provides adequate protection of a creditor's interest in cash collateral used by the debtor. See, e.g., Mbank Dallas v. O'Connor (In re O'Connor) 808 F.2d 1393, 1196-96 (10th Cir. 1987) (debtor authorized to use cash collateral to drill gas wells where creditors offered replacement liens of equal or greater value on well proceeds and other regular income).

42.     The Secured Creditor will be granted a replacement lien on future inventory delivered to the Debtor, the fish being grown at the Debtor's facilities, and proceeds generated by the sale of mature fish with a value equal to the amount of the Cash Collateral expended by the Debtor.

43.    Accordingly, where a debtor's use of cash collateral protects its secured creditor from such loss, the secured creditor is adequately protected without any other form of adequate protection. See, e.g., Orix Credit Alliance, Inc. v. Delta Resources, Inc., (In re Delta Resources, Inc.), 54 F.3d 722, 730 (11 Cir. 1995); In re Westchase I Associates, L.P., 126 B.R. 692,694 (Bankr. W.D.N.C. 1991)("Thus, if the value of the property itself is not declining, as is the case here, the creditor would not be entitled to protection of the accruing interest value of the claim.")

44.    Additionally, the Debtor will remain current on all of its loans with the Secured Creditor.

### IMMEDIATE RELIEF IS APPROPRIATE IN THIS CASE BECAUSE THE CONTINUATION OF THE DEBTORS' BUSINESSES DEPENDS UPON AUTHORIZATION TO USE CASH COLLATERAL

45.    In enacting section 363 of the Bankruptcy Code, Congress specifically recognized that it might be necessary to schedule expedited hearings on requests for authorization to use cash collateral because of the business exigencies of individual cases. Section 363(c)(2)(B) authorizes the use, sale, or lease of cash collateral "after notice and a hearing." Section 363( c)(3) provides, in pertinent part:

> Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with the hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor . .. The court shall act promptly on any

> request for authorization under Paragraph (2)(B) of
> this subsection.

11 U.S.C. § 363( c)(3) (emphasis added).

     46.     Similarly, the Ninth Circuit Court of Appeals has recognized that <u>ex parte</u> interim relief may be crucial to the success of a reorganization:

> We realize that "in certain circumstances the entire
> reorganization effort may be thwarted if emergency
> relief is withheld" and that reorganization under the
> Bankruptcy Code "is a perilous process, seldom more
> so than at the outset of the proceedings when the
> debtor is often without sufficient cash flow to fund
> essential business operations." [citation omitted] . . . It
> is for this very reason that Congress specified that
> hearings concerning the use of cash collateral "shall
> be scheduled in accordance with the needs of the
> debtor."

<u>Owens-Corning Fiberglass Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc.</u>, 759 F.2d 1440, 1449 n. 21 (9th Cir. 1985).

     47.     Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure provides that, at a preliminary hearing, the "court may authorize the use of <u>only the amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."</u> Fed. R. Bankr. Proc. Rule 4001(b)(2) (emphasis added).

     48.     The Debtor requests, to avoid immediate and irreparable harm to the estate, the Court, at the preliminary hearing, authorize the Debtor to use the Secured Creditor's Cash Collateral through the date of the final

hearing.

49.     The Debtor must have the immediate use of the alleged Cash Collateral to meet payroll, to meet the daily costs and expenses of operating, to promptly pay its vendors, and to acquire goods and services to keep the Debtor operating. Any delay in the Debtor's ability to meet any of these needs could deprive the Debtor of its business and the ability to successfully reorganize its financial affairs, to the prejudice of all creditors and parties in interest.

## THE COURT SHOULD SCHEDULE A FINAL HEARING ON THE MOTION AS SOON AS PRACTICABLE

50.     Rule 4001(b) of the Federal Rules of Bankruptcy Procedure provides that "the court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 15 days after service of the motion." Fed. R. Bank. Proc. Rule 4001(b)(1) (emphasis added).

51.     The Debtor requests the Court set a final hearing on the Motion on or about _____.

52.     The Debtor further requests that, at the final hearing on the Motion, the Court authorize the Debtors to continue to use revenues from the Cash Collateral for the Debtor's projected expenses, in accordance with the Cash Budget, through _____.

## RESERVATION

53.     At this time, the Debtor has not completed an analysis of the perfection or priority of the Secured Creditor's interests, or whether any of the claims or security interests of the Secured Creditor is subject to defenses, avoidance, or subordination. Nothing in this Motion is intended or should be construed as an admission by the Debtor as to the amount, nature, extent, or priority of the claims or secured interests, if any, claimed by the Secured Creditor. Rather, to the extent the Secured Creditor has an interest in the Debtor's Cash Collateral, the Debtor proposes to provide the Secured Creditor with the adequate protection proposed herein.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court:

A.     enter an order in the form attached hereto as Exhibit "1," authorizing, on an interim basis, the Debtor's immediate use of the cash collateral in accordance with this motion;

B.     setting a final hearing on this motion on or about _____; and

C.     for such other and further relief as the Court may deem just and proper.

DATED: Honolulu, Hawaii, June 23, 2011.

/s/ James A. Wagner
Proposed Attorney for Debtor
and Debtor-in-Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

In re

HAWAII PACIFIC TELEPORT, LP,

      Debtor and
      Debtor-in-possession

Case No. _11- 01764_
(Chapter 11)

## DECLARATION OF LEEANA A. SMITH-RYLAND; EXHIBIT "A"

      I, LEEANA A. SMITH-RYLAND, hereby declare that, if called as a witness in this action, I could and would testify competently of my own personal knowledge as follows:

      1.     I am the sole Member/Manager of Hawaii Capital Holdings, LLC, the sole Manager of Hawaiian Transmission Solutions, LLC, the General Partner of the Debtor. I am also the designated Responsible Individual for the Debtor.

      2.     I am familiar with the Debtor's assets and its business operations.

      3.     I have reviewed the Memorandum in Support of Motion for Order Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. § 363(c)(2) ("Memorandum"). All of the facts set forth in the Memorandum are

true and correct to the best of my knowledge, information and belief.

        4.     Attached hereto as Exhibit "A" is a true and correct copy of the Cash Budget for the period from June 20, 2011, through December 31, 2011, prepared to project the expected cashflow from the Debtor's operations for the period which the Debtor requests the use of the Cash Collateral.

        5.     Based on the historical data, and after examining the Debtor's business, making reasonable and conservative assumptions regarding projected operations, and considering the impact of the bankruptcy process on the operations of the Debtor, the Debtor projects that the aggregate levels of cash will increase or remain level during the course of this proceeding.

        I declare under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: ~~Honolulu, Hawaii~~, Rumson, New Jersey, _June 23, 2011._

_____
LEEANA A. SMITH-RYLAND

2

# HAWAII PACIFIC TELEPORT, LP
## Profit & Loss Budget Overview
### January through December 2012

| Ordinary Income/Expense | Jul 11 | Aug 11 | Sep 11 | Oct 11 | Nov 11 | Dec 11 | Jan - Dec 11 | Notes |
|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | |
| **4100 · Recurring Revenue** | | | | | | | | |
| 4125 · Uplink and downlink services | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 300,000.00 | |
| 4160 · Rack space rentals | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 15,000.00 | |
| 4185 · SCPC Services | 95,000.00 | 95,000.00 | 95,000.00 | 95,000.00 | 95,000.00 | 95,000.00 | 570,000.00 | |
| **4195 · CO-LOCATION SERVICES** | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | |
| **Total 4100 · Recurring Revenue** | 152,500.00 | 152,500.00 | 152,500.00 | 152,500.00 | 152,500.00 | 152,500.00 | 915,000.00 | |
| **4650 · I-DIRECT INCOME (I-DIRECT SERVICES INCOME)** | | | | | | | | |
| 4650-2 · I-DIRECT INTERNET SERVICES (INTERNET SERVICES) | 5,000.00 | 4,250.00 | 5,250.00 | 5,250.00 | 5,250.00 | 5,250.00 | 30,250.00 | |
| 4650 · I-DIRECT INCOME (I-DIRECT SERVICES INCOME) - Other | 2,950.00 | 2,950.00 | 2,950.00 | 2,950.00 | 2,950.00 | 2,950.00 | 17,700.00 | |
| **Total 4650 · I-DIRECT INCOME (I-DIRECT SERVICES INCOME)** | 7,950.00 | 7,200.00 | 8,200.00 | 8,200.00 | 8,200.00 | 8,200.00 | 47,950.00 | |
| **Total Income** | 160,450.00 | 159,700.00 | 160,700.00 | 160,700.00 | 160,700.00 | 160,700.00 | 962,950.00 | |
| **Cost of Goods Sold** | | | | | | | | |
| **4850 · I-DIRECT COSTS (I-DIRECT COSTS)** | 6,550.00 | 6,550.00 | 6,550.00 | 6,550.00 | 6,550.00 | 6,550.00 | 39,300.00 | SES Americom |
| **4900 · Transmission Costs** | | | | | | | | |
| 4910 · Leased Circuit | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 12,000.00 | Intelsat/Harris |
| | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 24,000.00 | Allen Comm |
| 4915 · Satellite Time (Space Segment) Allen Comm Equip. Lease | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 360,000.00 | APT, Telstar Canada, SES Worldskies, Time Warner Telecom |
| 4925 · Co-location Fees | | | | | | | 0.00 | |
| **Total 4900 · Transmission Costs** | 66,000.00 | 66,000.00 | 66,000.00 | 66,000.00 | 66,000.00 | 66,000.00 | 396,000.00 | |
| **Total COGS** | 72,550.00 | 72,550.00 | 72,550.00 | 72,550.00 | 72,550.00 | 72,550.00 | 435,300.00 | |
| **Gross Profit** | 87,900.00 | 87,150.00 | 88,150.00 | 88,150.00 | 88,150.00 | 88,150.00 | 527,650.00 | |
| **Expense** | | | | | | | | |
| **5000 · Overhead Costs** | | | | | | | | |
| 5015 · Personnel - Technical | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 60,000.00 | Adding Naveen in July |
| **5040 · Contract Services** | | | | | | | | |
| 5040-1 · Janitorial | 204.19 | 204.19 | 1,747.63 | 858.64 | 590.12 | 460.54 | 4,065.31 | |
| 5040-2 · Security | | 138.06 | | | 138.06 | | 276.12 | |
| 5040-3 · Teleport Support | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 60,000.00 | Brian Scoonover/Minahyu |
| **Total 5040 · Contract Services** | 10,204.19 | 10,342.25 | 11,747.63 | 10,858.64 | 10,728.18 | 10,460.54 | 64,341.43 | |
| 5050 · Repairs & Maintenance | 10,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 20,000.00 | Need to replace A/C in July |
| 5055 · Supplies & Tools | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 2,400.00 | |
| **5060 · Utilities** | | | | | | | | |
| 5060-1 · Electricity | 15,500.00 | 15,500.00 | 15,500.00 | 15,500.00 | 15,500.00 | 15,500.00 | 93,000.00 | Hawaii Elec. |
| 5060-3 · Cable TV | 54.19 | 54.19 | 54.19 | 54.19 | 54.19 | 54.19 | 325.14 | |
| **Total 5060 · Utilities** | 15,554.19 | 15,554.19 | 15,554.19 | 15,554.19 | 15,554.19 | 15,554.19 | 93,325.14 | |
| **6005 · Rent** | | | | | | | | |
| 6005-1 · Monthly License Fee | 16,308.89 | 16,308.89 | 16,308.89 | 16,308.89 | 16,308.89 | 16,308.89 | 97,853.34 | Land lease to Campbell |
| 6005 · Rent - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| **Total 6005 · Rent** | 16,308.89 | 16,308.89 | 16,308.89 | 16,308.89 | 16,308.89 | 16,308.89 | 97,853.34 | |
| 6010 · Office Expense | 850.00 | 850.00 | 850.00 | 850.00 | 850.00 | 850.00 | 5,100.00 | |

# EXHIBIT A

**HAWAII PACIFIC TELEPORT, LP**
**Profit & Loss Budget Overview**
**January through December 2012**

| | Jul 11 | Aug 11 | Sep 11 | Oct 11 | Nov 11 | Dec 11 | TOTAL Jan - Dec 11 | Notes |
|---|---|---|---|---|---|---|---|---|
| 6011 · Bank Wire Fees (Bank Wire Transfer Fees) | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 900.00 | |
| 6012 · Credit Card Processing Fees (Credit Card Processing Fees) | 48.23 | 47.79 | 48.53 | 48.31 | 48.26 | 98.65 | 339.77 | |
| 6013 · BANK CHARGES (MISC BANK CHARGES) | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 | |
| 6015 · Postage & Delivery | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,200.00 | |
| 6020 · Telephone | | | | | | | | |
| 6020-2 · Hawaii Local | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,200.00 | |
| 6020-3 · Cellular/ Mobile | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 | |
| Total 6020 · Telephone | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 1,800.00 | |
| 6025 · Travel | | | | | | | | |
| 6025-1 · Meals & Entertainment | 340.00 | 340.00 | 340.00 | 340.00 | 340.00 | 340.00 | 2,040.00 | |
| 6025-2 · Lodging and Travel | 3,000.00 | | 1,000.00 | | | 1,500.00 | 5,500.00 | Incl. airfare from NYC to Hawaii twice + trade conference(s) |
| 6025-3 · Ground Transport | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 3,000.00 | |
| Total 6025 · Travel | 3,840.00 | 840.00 | 1,840.00 | 840.00 | 840.00 | 2,340.00 | 10,540.00 | |
| 6030 · Insurance | | | | | | | | |
| 6030-1 · Insur-Teleport Liability & Prop | 724.00 | 724.00 | 724.00 | 724.00 | 724.00 | 724.00 | 4,344.00 | |
| 6030-2 · Insur-Liability | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 6030-3 · Insur-Workers Compensation | 1,213.00 | 1,213.00 | 1,213.00 | 1,213.00 | 1,213.00 | 1,213.00 | 7,278.00 | |
| 6030-5 · Insur-Employee Health | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 11,100.00 | |
| Total 6030 · Insurance | 3,787.00 | 3,787.00 | 3,787.00 | 3,787.00 | 3,787.00 | 3,787.00 | 22,722.00 | |
| 6035 · Outside Services | | | | | | | | |
| 6035-1 · Payroll Processing | 206.00 | 206.00 | 206.00 | 206.00 | 206.00 | 206.00 | 1,236.00 | |
| 6035-3 · Other | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 750.00 | |
| Total 6035 · Outside Services | 331.00 | 331.00 | 331.00 | 331.00 | 331.00 | 331.00 | 1,986.00 | |
| 6040 · Licenses & Fees | | | | | | | | |
| 6040-2 · Hawaii | | | | | 180.00 | | 180.00 | |
| Total 6040 · Licenses & Fees | | | | | 180.00 | | 180.00 | |
| 6045 · Taxes | | | | | | | | |
| 6045-2 · Hawaii Other Taxes | | | 139.37 | | | | 139.37 | |
| 6045-3 · Payroll Taxes (Employer payroll taxes) | 3,361.10 | 3,361.10 | 3,361.10 | 3,361.10 | 3,361.10 | 3,361.10 | 20,166.60 | |
| 6045-4 · California Taxes (California State Taxes) | | | | | | | 0.00 | |
| Total 6045 · Taxes | 3,361.10 | 3,361.10 | 3,500.47 | 3,361.10 | 3,361.10 | 3,361.10 | 20,305.57 | |
| 6050 · Professional Fees | | | | | | | | |
| 6050-1 · Legal | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 8,000.00 | 48,000.00 | DIP Bankruptcy Atty. |
| 6050-2 · Accounting | | 1,250.00 | | | | 1,250.00 | 2,500.00 | Tax prep/review books |
| 6050-7 · Consultants - Other | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 50,000.00 | Guthrie (5K), [Teleport Consultant $10K)/month |
| Total 6060 · Professional Fees | 8,000.00 | 19,250.00 | 18,000.00 | 18,000.00 | 18,000.00 | 19,250.00 | 100,500.00 | |
| 6200 · Dues and Subscriptions | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 900.00 | |
| Total 5000 · Overhead Costs | 83,584.60 | 83,972.22 | 85,267.71 | 83,239.13 | 83,288.62 | 85,641.37 | 504,993.65 | |
| Total Expense | 83,584.60 | 83,972.22 | 85,267.71 | 83,239.13 | 83,288.62 | 85,641.37 | 504,993.65 | |
| Net Ordinary Income | 4,315.40 | 3,177.78 | 2,882.29 | 4,910.87 | 4,861.38 | 2,508.63 | 22,656.35 | |
| Net Income | 4,315.40 | 3,177.78 | 2,882.29 | 4,910.87 | 4,861.38 | 2,508.63 | 22,656.35 | |